Thank you. Mr. Conner, good morning. The brief filed on behalf of the defendant in this case attacks the search of the apartment which was based on a warrant application which included observations made by the police. The defendant's position is that the court, the district court, was wrong in determining that the initial stop of an individual who had money in his car was due to a warrant application. It was a stop of a known drug dealer. That individual had, I believe, a 19-year-old drug conviction and there were rumors picked up during telephone intercepts which indicated that that person was suspected to be a drug dealer by some other drug dealers. But there was more than that. There was also evidence submitted by affidavit that that individual within the very recent past had been a participant in a transaction where he had sold drugs to a government cooperator. And there was also the fact that the vast amounts of cash which were found in his position were not only, the source was not only not explained, but that the defendant gave patently false attempts to explain them away. Yes, your honor, I acknowledge that. So why isn't that probable cause? Well, I acknowledge that there's a large amount of cash seized. With respect to the recent drug activity, it turns out that the recent drug activity was based on informant information and the informant information was never supported with veracity or credibility. The informant information was sufficiently reliable that it contributed to the government's decision to put this individual under watch in the first place. The government was observing him, trying to find him in his car, because of the combination of the informant's tip and the intercepted calls between the drug dealers, which indicated not only that this man was a drug dealer, but that they were planning to rob him. Yes, your honor, but that does not establish probable cause. That establishes reasonable suspicion on the part of the police. But you can't separate these things out. You've got the controlled drug purchase, you've got the conversations between the drug dealers on wiretapped intercepts, and you've got the discovery of the mountains of cash, small bills, no credible explanation, and in fact an attempt to lie about it. I can't for the life of me see why that doesn't add up to probable cause. Because the, as it turns out, there was sufficient informant credibility and reliability in the possession of the government. They just didn't present it to Judge Zobel. I think that's a big problem, is that they had the ability, and maybe it was by mistake, but they didn't present the full facts of what they learned from this informant to make that informant a reliable source about the alleged recent drug transaction. Let me be sure I understand you. We often run into cases where a probable cause finding is attacked because the government withheld information that would have undermined probable cause. You're saying that this probable cause finding can be attacked because the government withheld information that would have strengthened the finding. There's a disconnect there. The question is, did the government present sufficient information to the judge to warrant the finding of probable cause? Judge Zobel said, yes, I just ticked off for you the items that she mentioned, or she relied on, in making the finding of probable cause. Superficially, on its face, it seems sufficient. So what effect does withheld evidence have, if that withheld evidence would only have made what she thought was clear anyway, more clear? Your Honor, if this court were to rule that the unsupported allegation of a prior drug transaction, plus the 19-year-old drug conviction, plus the amount of money in the car, and the individual's dishonesty about the source of that money... ...and the intercepted conversations between known drug dealers. Yes, there were rumors. There was interpretation. There were rumors there were two individuals, known drug dealers, who were talking about robbing Medina because he was carrying drug cash, drug payoffs. Because they believed he was. They didn't know that. I have a slightly different line of reasoning I'd like you to respond to. So they find him in the car with all of this money. They have the prior information about him. And then they go to his apartment. Are you saying they had no basis to go to his apartment? When they go to where they think he lives, they are told he does, in fact, live there. And they go and they knock on the door and then they hear footsteps. There's obviously someone inside. So where do you think the chain of justification stops? Where does it fail? Then those footsteps have to amount to exigent circumstances. Yes, but the district court found that they did. But are you saying they had no basis to even go to where he lived, which is not very far away from where he is found in the car with the cash? My position is, Your Honor, that the amount of information presented to the judge at the time of the motion to suppress hearing did not establish probable cause that there was evidence of drug distribution in the apartment. There was some evidence, and I would suggest that that did not raise the level of probable cause. So they required probable cause as opposed to reasonable suspicion to go to where he lived? No, they could go to where he lived without reasonable suspicion. And then they could conduct further investigation to see if they could establish probable cause to get a warrant to search the apartment. So ultimately your case has to turn on there were no exigent circumstances warranting them going into the apartment once they heard the footsteps and the guy refuses to open the door and evidently tries to get out the back door? Well, the judge didn't seem to accept that proposition that he was trying to get out the back door. She definitely said that he was moving away from the door after knocking. He does not open the door. Correct. That's hardly an innocent activity when the police come knocking. She also said that the officers reasonably thought that he might be trying to either escape or destroy evidence, which is almost the classic definition of exigent circumstances. Yes, Your Honor. But then what I cited in my brief was the argument that that type of activity, I believe it's the King case if I'm not mistaken, that that type of activity was determined by the King court, which is, I acknowledge, a state appellate court, but it's the case in which we're all relying is that the government can't create exigent circumstances. But in that court, very similar activity was determined not to be exigent circumstances. And if this court determines that the circumstances under which the money was discovered gives rise to probable cause, then we have to get exigent circumstances. And I would suggest that what the police observed at the door of the apartment did not rise to the level of exigent circumstances. Thank you. Thank you very much. Good morning, Mr. Dedeo. Good morning, Judge Dorea and the court. May it please the court, David Dedeo on behalf of the United States. I'd like to begin, Your Honors, with just responding to a few points made by appellant counsel, in particular with regard to probable cause. I understand through the court's question that this is going to largely turn on the exigency, but I did want to clarify just a few points. The first is that the district court had ample evidence to conclude that Jose Medina Lopez was a known drug dealer. The court had, among other things, sworn statements of law enforcement officers and police reports submitted by both the defendant and the government that he conducted a controlled purchase of heroin, providing that to a government informant. It wasn't based on informant hearsay. Agents actually viewed this, and that's part of the record that the court can consider. There was a detention hearing that was transcribed and docketed before Judge Zobel made her decision in this case, in which the details of that transaction were spelled out. Agents actually watched this happen. So it wasn't a rumor and it wasn't informant hearsay. But even setting that aside, even setting the detention hearing aside, there were multiple sworn statements that a controlled transaction occurred and that Medina Lopez was a participant in that transaction. So when she concluded that he was a known drug trafficker, it wasn't based simply on this past, I think it was nine years, that he served in state prison for cocaine trafficking. But moving forward, I think, again, looking at the totality of the circumstances on the record before the district court at the motion to suppress, there was ample support for the district court's conclusion that there was probable cause. There would be drug trafficking evidence in that apartment. It's not just the fact that Medina Lopez had previously delivered heroin. It's not just the voluminous cash he had just taken from that apartment. It is also what was at that point the well-corroborated information from the wiretap. One thing that has troubled me a bit about the government's case is suppose the police had gone and knocked on the door and there was no answer. There was no basis to think that someone was inside and they were going to destroy evidence. The officers at that point could have gone and gotten a warrant to search the apartment. Was this explored at all in the briefing below? Your Honor, if I understand the question correctly, was the fact that if they had no reason to believe somebody was in the apartment, could they have had time to go get the warrant and should they have done so? Yeah, essentially. Well, first, I think what I recognize... The implication of your position is no, they didn't need to rely on exigent circumstances. They already had probable cause. They could have broken down the door of the apartment. Is that what you're arguing? No, not at all, Your Honor. Even with probable cause, they still wouldn't have needed a warrant unless some exception to the warrant requirement applied. Absolutely. And the exception you say applies is exigent circumstances. Correct. The destruction of evidence and fear for officer safety in that encounter. But Your Honor is absolutely correct. And indeed, after the officers made the entry and did the protective sweep, they then halted, went and got a warrant before they did the actual search. Yes. Okay. Yes, Judge Zobel, absolutely. Didn't they knock the door down? I'm sorry? They actually did knock the door down, didn't they? They did. Judge Zobel made findings on this point. They approached that second floor. They knock on the first door they encounter. They hear from the inside somebody say, Who is it? They announce themselves as police. And then there's the running away. That's what she found, that he ran at that point. The interlocutor, she put it, ran away. The door they breached was actually a different door because they're deciding what to do again. They're making these decisions. They're making a split-second decision. What do we do? This person isn't coming to the door. He's running away. They fear evidence destruction. They fear that potentially he has a weapon and he's protecting that stash house. So they decide they're going to breach the door. But as it's described in the brief, when they look at the door, they see that it is sealed shut, that that is not an entrance or an egress. So they move to the next door. The reason I point that out is it wasn't an instantaneous action. They didn't hear a footstep and immediately knock down the door. They tried to figure out what to do in the circumstances and they decided the only reasonable thing to do was to enter the apartment. And just to put a point on it, I mean, the government is well aware of, Judge Lynch, your opinion, in Decessare making clear that the Boston police or any law enforcement need to know that absent an exigency, they cannot, for the purpose of freezing a scene, enter it and conduct a protective sweep. We're dealing with a separate scenario here. I think it's a much closer call if they have no information that somebody's on the inside, but they still know it's a stash house and they still understand that they've arrested a courier with well over a quarter million dollars in cash a mile away. But that would be a separate analysis based on the totality of the circumstances and those case-specific facts which are what allow the district court to police the police in using this exception to the warrant requirement. So, Your Honor, I guess the final point I'd make is that it is similar to the facts in Samboy that this court addressed where the general principle that when police engage a drug courier following a drug transaction, that courier is expected to arrive somewhere, it can create that exigency and they're forced to make decisions in the moment. In this case, they made the decision after consulting with the U.S. Attorney's Office to go figure out the precise location of the apartment, obtain a warrant, and secure that location. And one of the ways they decided to do this was to knock on that door to see if anybody was inside to see if they needed... to basically see if there was an exigency in this case. And there was. I think under King, the police acted reasonably irrespective of whether there's some scenario in which they could have gotten a warrant first. The police-created exigency doctrine was sufficiently narrowed. There's no indication, no allegation that they violated the Fourth Amendment prior to the exigent circumstances arising. There's no indication that they threatened, Your Honors, to go into that apartment inappropriately. So, for all of those reasons, unless the court has further questions, the government would rest on its brief and ask this court to affirm the district court's decision below. Thank you. Thank you.